UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE RAY LILLY,

                Plaintiff,                  Case No. 1:11-cv-888

v.                                               Honorable Paul L. Maloney

RICHARD MCKEON et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Eugene Ray Lilly presently is incarcerated at the Oaks Correctional Facility in Manistee, Michigan. He sues the following: Director of the Michigan Department of Corrections (MDOC) Richard McKeon; former Director of the MDOC Patricia Caruso; Administrative Assistant Sean Lockhart; Legal Writer Coordinator Sheryl Grove; Assistant Deputy Warden Rick Sharp; Assistant Resident Unit Supervisor (ARUS) Fredrick Rowe; and the law firm Peterson & Paletta, PLC.

Plaintiff alleges that Peterson & Paletta, PLC, is under contract with the Michigan Department of Corrections (MDOC) to provide legal writing assistance to prisoners. On February 24, 2010, Peterson & Paletta, PLC, assigned Plaintiff a legal writer to draft a supplemental brief[1] in connection with Plaintiff's appeal of his criminal conviction. Plaintiff gave the legal writer "critical exculpatory physical evidence" to be submitted with, or attached to, the supplemental brief. (docket #1, Compl. ¶ 18.) In March, Peterson & Paletta reviewed and approved the "pleadings" that the legal writer had prepared. (*Id.* at ¶ 20.) The legal writer then gave the pleadings to Plaintiff with instructions on how to mail them to the court of appeals. In April, Plaintiff learned that the State responded to Plaintiff's appeal challenging Plaintiff's lack of physical exculpatory evidence. Plaintiff then reviewed his "Legal Writer File" and discovered that the physical evidence had not been attached to the pleadings prepared by the legal writer. (Compl. ¶ 25.)

Plaintiff asked for assistance from Peterson & Paletta, PLC, but nothing was done for over three months. Plaintiff also made complaints to the supervisors at the legal writer program. Shortly thereafter, another legal writer was assigned to assist Plaintiff. On December 21, 2010, the

---

[1] According to the docket from the Court of Appeals, Plaintiff's attorney also submitted a brief on Plaintiff's behalf.

court of appeals denied Plaintiff's appeal and affirmed his conviction. Plaintiff alleges that the denial was based, in part, on the failure to provide the evidence that was not attached to his brief.

The legal writer helped Plaintiff prepare a motion for reconsideration on January 5, 2011. On January 7, Plaintiff returned to his unit for the regularly-scheduled morning legal mail pick-up at 10:00 am. Defendant ARUS Rowe never came to collect the mail at 10:00 am because, according to Rowe, he was involved in an emergency investigation. Plaintiff made several requests to receive assistance from other officials, to no avail. Plaintiff's mail was processed by Rowe three days later, on January 10. Plaintiff's motion was rejected by the Michigan Court of Appeals as untimely because it was received by the court on January 12, one day after the twenty-one-day deadline had passed. Plaintiff again sought reconsideration from the court, but his motion was rejected on or about March 15. Plaintiff then sought leave to appeal to the Michigan Supreme Court, but that court rejected Plaintiff's appeal as untimely.[2]

Plaintiff asserts two claims. In Count I, he alleges that Defendants' failure to provide an adequate legal writer program denied him his First Amendment right of access to the courts. In Count II, he alleges that the failure to process his legal mail also denied him access to the courts. As relief, Plaintiff seeks damages as well as declaratory and injunctive relief.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

---

[2] Because Plaintiff's first motion for reconsideration was untimely, it did not toll the 56-day deadline for seeking leave to appeal to the Michigan Supreme Court.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Failure to allege particular conduct

Plaintiff fails to state a claim against Defendants McKeon, Caruso, Lockhart, Grove and Sharp because the complaint does not allege any conduct on their part, much less unconstitutional conduct. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

To the extent Plaintiff claims that Defendants McKeon, Caruso, Lockhart, Grove, and/or Sharp are vicariously liable for the actions of other individuals that were under their authority or control, Plaintiff fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir.

2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.

Because Plaintiff fails to allege that Defendants McKeon, Caruso, Lockhart, Grove, and/or Sharp engaged in any unconstitutional conduct, his claims against them will be dismissed.

### B. Access to the Courts

Plaintiff asserts that he was denied his First Amendment right of access to the Courts when (1) his legal writer failed to attach the certain evidence to his appellate brief, and (2) Defendant Rowe did not process his legal mail on the day that Plaintiff intended to send it.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351. The tools that the state must provide "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355; *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) ("[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil

rights claims only."). Thus, to state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a "nonfrivolous legal claim." *Lewis*, 518 U.S. at 356.

1.  Defendant Peterson & Paletta, PLC

Plaintiff contends that Peterson & Paletta, PLC, through their approval of Plaintiff's legal documents and supervision of Plaintiff's legal writer, provided inadequate legal assistance when they allowed Plaintiff to file a brief without certain "exculpatory" evidence attached.

The MDOC has established a prison legal writer program whereby prisoners can be trained to provide assistance to other prisoners who are unable to effectively help themselves in the preparation of legal materials. *See* MDOC Policy Directive 05.03.116 ¶ P (eff. July 21, 2008). According to MDOC's policies and the allegations of the complaint, the prison legal writers work under the direction of private attorneys contracted by the MDOC, like those at Peterson & Paletta, PLC. Plaintiff's First Amendment claim is problematic for several reasons.

First, it is doubtful that Defendants were constitutionally obligated to provide Plaintiff with the tools to file the brief in question. It is true that prison officials are obligated to provide inmates with the tools necessary to attack their criminal convictions. *Lewis v. Casey*, 518 U.S. at 351. The brief that Plaintiff filed, however, was not necessary for attacking his conviction. It was a *supplemental pro se* brief. According to the docket sheet for Plaintiff's case before the Michigan Court of Appeals, Plaintiff's court-appointed attorney filed a separate brief on Plaintiff's behalf. The Supreme Court has held that a defendant has no constitutional right to represent himself on appeal. *Martinez v. Ct. of App. of Calif.*, 578 U.S. 152, 163 (2000). Consequently, there is no "constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief

submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). Therefore, even if Defendants had prevented Plaintiff from filing any part of his supplemental brief, they would not have denied him his constitutional right to attack his conviction, because court-appointed counsel had already filed a brief on Plaintiff's behalf.

Second, it is doubtful that Plaintiff would be able to establish the actual injury element of an access-to-courts claim. S*ee Lewis*, 518 U.S. at 535. Plaintiff asserts that he was injured because the allegedly exculpatory evidence would have substantiated his arguments before the Michigan Court of Appeals. That court discussed Plaintiff's claims regarding the exculpatory evidence as follows:

> Defendant also argues that there was insufficient evidence presented at trial to support his convictions and that his trial counsel was ineffective for failing to adequately investigate and present an alibi defense. These assertions are based on defendant's contention that he was traveling out of state at the time he was supposed to have been verbally informed that a PPO had been issued. The only charge against defendant in which the existence of a PPO was an element of the crime was aggravated stalking.
>
> The only support defendant provides for this assertion is his own self-serving affidavit, in which he avers that he made trial counsel aware of the alleged baggage claims that would have proved he "was not in Michigan at the time I was allegedly notified of the existence of a PPO." At trial, a proof of service that indicated that defendant had been served was admitted without objection. Further, Teresa testified that defendant was aware of the PPO based on telephone conversations they had prior to the incident at issue. Viewed in the appropriate light, and deferring to the jury's superior position to assess witness credibility . . . the evidence was sufficient to support the finding that defendant was aware of the PPO and thus was guilty of aggravated stalking. Defendant also argues that defense counsel was ineffective because he did not adequately investigate and pursue his alleged alibi defense, i.e., that defendant was on a plane at the time he was allegedly served with the PPO. However, no mention was ever made at trial that defendant was actually on a plane when the PPO was served. Defendant insists that proof in the form of a

> flight manifest for the identified flight could have been easily obtained by counsel, yet he fails to provide the baggage claims he asserts he has to show that he was on the identified flight. The record is also at odds with defendant's assertion that counsel representing him at the preliminary examination could provide evidence that the police tampered with the proof of service.

*State of Michigan v. Lilly*, No. 293103, slip op. at 4-5 (Mich. Ct. App. Dec. 21, 2010) (citations omitted). Judging from the opinion, it appears that Plaintiff intended to use the exculpatory evidence to show that he was, in fact, on a plane when he was allegedly served with notice of the protective order pertaining to the victim of the aggravated stalking charge. Plaintiff attempted to argue that he was not aware of protective order and, thus, could not be guilty of aggravated stalking. The Court of Appeals noted, however, that other evidence at trial established Plaintiff's awareness of the protective order, including the proof of service that was admitted into evidence without objection, and the testimony of a witness who told Plaintiff about the protective order. In other words, Plaintiff's conviction was adequately supported by other evidence, and his allegedly exculpatory evidence would not have altered the Court's decision. Because it appears that he was not prejudiced by the failure to submit evidence, he cannot show the "actual injury" required for an access-to-courts claim.

Even assuming Plaintiff has adequately alleged actual injury, he fails to state a claim because Defendants were not the cause of any injury to Plaintiff. Plaintiff alleges that he initially gave the relevant evidence to prison legal writer Burton. After Burton obtained approval of the brief from Defendant, Burton gave a copy of the brief to Plaintiff along with instructions for mailing it to the court. Thus, it was Plaintiff who filed the brief without the legal attachments, not Defendant. *See* MDOC Policy Directive 05.03.116 ¶ S ("The prisoner receiving the [legal writing] assistance

will be responsible for obtaining required copies of the documents and mailing the documents to the courts or other parties.").

Plaintiff attempts to assign blame elsewhere, stating that he "was relying on the expertise of the MDOC Legal Writer Program for proper legal advice as he was totally ignorant to the law." (Compl. ¶ 22.) Notwithstanding Plaintiff's ignorance of the law, however, he clearly understood the need submit the physical evidence to the Court of Appeals along with his brief; he alleges that he initially gave the evidence to the prison legal writer "to be submitted/attached to" his brief. (Compl. ¶ 18.) Moreover, after he received the finalized brief from the legal writer, he did not require expertise in the law to determine whether his evidence was attached; a cursory review of his documents would have been sufficient. In sum, none of the allegations indicate that Defendant Peterson & Paletta, PLC, or any other Defendant, caused Plaintiff's brief to be filed without the relevant evidence attached.[3] For the foregoing reasons, therefore, Plaintiff does not state a claim against Defendant Peterson & Paletta, PLC.

### 2. Defendant Rowe

Plaintiff also claims that ARUS Rowe violated Plaintiff's right of access to the courts when he did not conduct his morning legal mail round on Friday, January 7, 2011. Because Plaintiff's mail was not processed that day, Plaintiff's motion for reconsideration of the appellate court's decision was processed and mailed three days (i.e., one business day) later, on Monday, January 10, and it arrived at the Court of Appeals on January 12, one day past the filing deadline.

Consistent with their obligations under *Bounds*, "prisons have an obligation to timely

---

[3] To the extent Plaintiff attempts to hold Peterson & Paletta, PLC, liable for the conduct of legal writers under its supervision, his claim fails because § 1983 does not allow claims based solely on a theory of vicarious liability or respondeat superior. *See Iqbal*, 129 S. Ct. at 1948.

mail court documents when prisoners have been diligent and punctual in submitting them to prison officials." *Dorn v. Lafler*, 601 F.3d 439, 444 (6th Cir. 2010). In *Dorn*, the prisoner submitted his legal mail to prison officials seven days before the filing deadline. *Id.* The Sixth Circuit concluded that seven days was a reasonable amount of time before the filing deadline for submitting legal mail to prison officials for mailing. *Id.* In contrast, Plaintiff attempted to mail his motion for reconsideration on a Friday, only four days (i.e., two business days) before it was due. Though his mail was not processed on that day, prison officials processed it and sent it three days (i.e., one business day) later.

As *Dorn* indicates, a prisoner's right to timely processing of legal mail to meet court deadlines is not absolute; the prison's obligations are limited by reasonableness and the diligence and punctuality of the prisoner. *Dorn*, 601 F.3d at 444. A delay of one business day is not unreasonable. Moreover, Plaintiff's actions suggest a lack of diligence and punctuality on his part. Plaintiff alleges that the prison legal writer prepared the motion for reconsideration on January 5, but Plaintiff did not attempt to mail the motion until two days later, on January 7. Considering that the Michigan Court of Appeals received the motion one day late, it appears that Plaintiff waited until nearly the last minute (i.e., the last possible business day) to have his motion processed and mailed for it to be timely received by the Michigan Court of Appeals. Thus, Plaintiff was injured as much or more by his own delay as by the conduct of Defendant Rowe.

Finally, Plaintiff does not allege that Defendant Rowe was the only person who could process and send his mail. Indeed, he claims that he attempted to have other officials assist him. He does not, however, name any of those officials or indicate why his efforts to obtain their

assistance were unsuccessful. For the foregoing reasons, therefore, Plaintiff does not state a claim against Defendant Rowe.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  September 21, 2011         /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge